**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **BRITANI POTTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 2:25-cv-02743-JAR-GEB** |
| | ) | |
| **STATE OF KANSAS** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant the State of Kansas ("Defendant"), by and through its undersigned counsel, pursuant to D. Kan. Rule 56.1(a) respectfully submits the following Brief in support of its Motion for Summary Judgment.

**STATEMENT OF THE MATTER**

This matter arises under the Equal Pay Act, 29 U.S.C. §206(d) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* Potter was employed by Defendant as an Associate Disciplinary Counsel working for the Kansas State Board of Healing Arts (the "Agency"). In connection with her employment, Potter claims she was paid less than a similarly situated male attorney, despite having similar job titles, in violation of Title VII and the Equal Pay Act.

Defendant is entitled to summary judgment on Potter's compensation discrimination claims because the undisputed evidence establishes that Potter's position as Associate Disciplinary Counsel was materially different from the position held by her purported comparator, Associate Litigation Counsel Jacob Overbey. The Equal Pay Act requires substantially equal work, not simply comparable credentials or job titles. Potter cannot satisfy that demanding standard. Likewise, her Title VII compensation claim fails because she cannot identify a similarly situated

comparator, and the undisputed evidence establishes that any compensation differences were attributable to position, duties, and responsibilities rather than sex.

On July 7, 2025, Potter filed an administrative charge of discrimination (the "Charge") relating to her disparate compensation claims. While the Charge was pending, Potter attended the August 8, 2025 meeting of the Board of Healing Arts. During an executive session of the meeting, it was discovered that Potter left a recording device in the closed session, in violation of the Agency's policies, Board policies, and state law. Potter was immediately placed on administrative leave, pending an investigation into her actions. After it was confirmed that the device contained unlawful recordings of closed sessions, Potter's employment was terminated. Potter claims her termination was in retaliation for her sex discrimination complaints, in violation of Title VII's provisions against retaliation.

There is no genuine dispute of material fact concerning Potter's discrimination claims or the legitimate, nonretaliatory reason for her termination. Potter has no evidence of pretext, and judgment should be entered in favor of Defendant.

## STATEMENT OF UNCONTROVERTED FACTS

### A. Potter's Employment

1. Plaintiff Britani Potter is female. Pretrial Order Potter, Stipulations ¶ 1

2. Potter began employment with the Kansas State Board of Healing Arts (the "Agency") on October 3, 2022, as an Attorney - Associate Disciplinary Counsel. ECF 56, Pretrial Order, Stipulations ¶¶ 4, 5.

3. Before becoming an attorney, Potter worked for the Agency as a law clerk while attending law school. Ex. 1, Potter Dep. 12:1-24.

4. Potter's position title throughout her employment was Attorney - Associate Disciplinary Counsel. ECF 56, Pretrial Order, Stipulations ¶ 5.

5. Potter worked remotely from Arizona throughout her employment. ECF 56, Pretrial Order, Stipulations ¶ 6.

6. During all relevant periods, Susan Gile served as Executive Director and Scott Henricks served as Operations Manager. ECF 56, Pretrial Order, Stipulations ¶ 7.

7. Potter accepted employment at an annual salary of $55,000. ECF 56, Pretrial Order, Stipulations ¶ 8.

8. On June 11, 2023, Potter received a 4.9 percent salary increase, resulting in annual compensation of $57,749.99. ECF 56, Pretrial Order, Stipulations ¶ 9.

9. On August 7, 2023, Potter received a merit increase that raised her annual salary to $60,000. ECF 56, Pretrial Order, Stipulations ¶ 10.

10. Potter received a $500 bonus on January 1, 2024, and a $665 bonus on May 7, 2024. ECF 56, Pretrial Order, Stipulations ¶ 11-12.

11. On June 9, 2024, Potter received a 12.5 percent increase that raised her annual salary to $68,542.01. ECF 56, Pretrial Order, Stipulations ¶ 13.

12. The Agency's compensation decisions required approval by the Kansas Department of Administration and that the Agency could not extend job offers or implement salary increases without Department of Administration approval. Ex. 2, Price Dep. 12:10-21.

13. Attorney compensation was set by comparison within the Agency's departments, not across the Agency as a whole according to the position occupied and the duties assigned. Ex. 3, Gile Dep. 14:25-15:13.

14. In July 2023, Agency leadership submitted a salary request seeking approximately a 14.5 percent increase for Potter. Ex. 2, Price Dep. 16:18-20.

15. The Department of Administration did not approve the requested increase and instead approved an increase of approximately 5.5 percent. Ex. 2, Price Dep. 16:23-17:5; Ex. 4, Henricks Dep. 35:8-15; 37:1-19.

**B. Agency Attorneys**

16. The Agency maintained separate Disciplinary, Litigation, and General Counsel legal functions. Ex. 3, Gile Dep. 12:9-23; Ex. 1, Potter Dep. 13:15-20.

17. Attorneys in the General Counsel's office serve as legal counsel to the Board and the Agency. Ex. 1, Potter Dep. 25:4-8.

18. Attorneys in the Litigation Department presented cases before the Board, negotiated settlements, took depositions, and litigated disciplinary actions against licensees. Ex. 3, Gile Dep. 12:8-23; Ex. 4, Henricks Dep. 10:17-22.

19. Attorneys in the Disciplinary Department screened complaints against the applicable practice acts, determined whether investigation was warranted, provided legal direction to investigators, and presented developed investigations to review committees or councils. Ex. 3, Gile Dep. 9:24-10:11, 13:1-14; Ex. 2, Price Dep. 10:20-24; Ex. 4, Henricks Dep. 10:23-11:10.

20. Throughout the relevant period, Potter reported through the Disciplinary Department and not the Litigation Department. ECF 56, Pretrial Order, Stipulations ¶ 15; Ex. 1, Potter Dep. 16:9-17.

21. The written position description for Associate Disciplinary Counsel states that the position works "under the direction of the Disciplinary Counsel" and identifies Disciplinary Counsel as the supervisor who assigns work, gives directions, answers questions, is directly in

charge of the position, and evaluates the incumbent's work. Ex. 5, Associate Disciplinary Counsel Position Description at 1.

22. The Associate Disciplinary Counsel Position Description states that Associate Disciplinary Counsel "[a]ssists Disciplinary Counsel and Deputy Disciplinary Counsel" in reviewing and opening or closing complaints received by the Board. Ex. 5, Associate Disciplinary Counsel Position Description at 2.

23. The Associate Disciplinary Counsel Position Description further provides that Associate Disciplinary Counsel "[p]repares legal documents as directed by Disciplinary Counsel/Deputy Disciplinary Counsel," conducts legal research and prepares legal documents "under attorney supervision," and "[a]ssists with preparation of disciplinary investigations and presentations to review committees / councils as needed." Ex. 5, Associate Disciplinary Counsel Position Description at 2.

24. Although she disagreed with the percentages assigned to the duties in the position description, Potter agreed the listed duties were "a fair representation of the job." Ex. 1, Potter Dep. 116:12–117:11.

25. Potter testified that assisting Disciplinary Counsel and Deputy Disciplinary Counsel constituted "a large portion of the time" in her role as Associate Disciplinary Counsel. Ex. 1, Potter Dep. 116:23–117:2, 118:18–119:3.

26. Potter held "a lower level position" within the Disciplinary Department and reported to other attorneys. Ex. 1, Potter Dep. 134:25–135:12.

27. Though she worked "very independent[ly] the majority of the time," Potter admits that "if something came up," she consulted Disciplinary Counsel Nancy Dodik. Ex. 1, Potter Dep. 135:7–12.

28. In contrast, the written position description for Associate Litigation Counsel characterizes that position as a "highly responsible legal and administrative position as Associate Counsel for the Board of Healing Arts." Ex. 6, Associate Litigation Counsel Position Description at 2.

29. The Associate Litigation Counsel Position Description assigns Associate Litigation Counsel responsibility for, among other things, litigating actions seeking revocation, suspension, or limitation of Board licenses, handling scientifically complex litigation including depositions, acting as prosecuting attorney at administrative hearings, and serving as counsel for the Board in judicial and administrative actions. Ex. 6, Associate Litigation Counsel Position Description at 2.

30. The "highly responsible legal and administrative position" language contained in the Associate Litigation Counsel position description does not appear in the Associate Disciplinary Counsel position description. Ex. 1, Potter Dep. 125:1–11.

**C. Comparator Evidence**

31. Potter did not identify any comparator by name in her initial Charge. Ex. 1, Potter Dep. 158:19-20; 159:21-24.

32. Potter contends that she, Jacob Overbey, James McSweyn, Brad Taylor, and Sebastian Orosco all held attorney positions that should be treated similarly for compensation purposes. Ex. 1, Potter Dep. 160:17-20; 161:1-12.

33. During the relevant period, Jacob Overbey and Sebastian Orosco were attorneys employed by the Agency in the Litigation Department. ECF 56, Pretrial Order, Stipulations 16.

34. During the relevant period, James McSweyn and Brad Taylor were attorneys employed by the Agency in the General Counsel's office. Ex. 1, Potter Dep. 55:2-6.

35. In her deposition, Potter specifically identified Jacob Overbey as a comparator for her Equal Pay Act and Title VII claims. Ex. 1, Potter Dep. 156:4-9; 160:17-20.

36. Potter and Overbey worked in different positions with the Agency. Ex. 1, Potter Dep. 124:6-9; 128:20-23; Ex. 3, Gile Dep. 20:1-2.

37. Jacob Overbey was employed as an Associate Litigation Counsel in the Litigation Department. ECF 56, Pretrial Order, Stipulations ¶ 16.

38. Overbey reported through litigation leadership and performed litigation functions for the Agency. Ex. 1, Potter Dep. 128:20-23.

39. Overbey and other Litigation Department attorneys were responsible for presenting disciplinary matters to the Board, presenting evidence, and arguing the case during administrative sessions. Ex. 1, Potter Dep. 25:9-27:8; Ex. 2, Price Dep. 10:20-24.

40. Litigation attorneys require litigation skills associated with presenting and arguing cases because "that is their primary job description." Ex. 4, Henricks Dep. 13:3-9.

41. Litigation Department attorneys reported to a different supervisor than Potter. Ex. 1, Potter Dep. 124:10-12; 192:5-12.

42. Potter had different job responsibilities than those of an attorney working as an Associate Litigation Counsel. Ex. 1, Potter Dep. 124:13-25.

43. Jacob Overbey and Potter were not employed in the same role and did not perform the same job duties and responsibilities. Ex. 3, Gile Dep. 20:1-2. "They're absolutely not the same position." Ex. 3, Gile Dep. 19:18-20:2

44. "The biggest thing" distinguishing the departments was that Litigation Department attorneys litigated cases before the Board in administrative hearings, whereas disciplinary

attorneys reviewed complaints "more on the administrative side of things." Ex. 2, Price Dep. 10:12-24.

45. Attorneys in the role of Associate Litigation Counsel serve in a position that is "a highly responsible legal and administrative position as associate counsel for the Board of Healing Arts." Ex. 1, Potter Dep. 125:1-11. Similar language is not used to describe the job duties for attorneys in the Associate Disciplinary Counsel role. *Id.*

46. Litigation Department attorneys negotiate settlements, take depositions, draft summary orders, represent the disciplinary panel before the Board, and serve as "litigators." Ex. 3, Gile Dep. 12:8-23.

47. Potter never conducted a deposition while employed by the Agency. Ex. 1, Potter Dep. 126:18-19.

48. Potter never acted as prosecuting counsel in an administrative disciplinary hearing. Ex. 1, Potter Dep. 127:1-5. At the time of her termination, Potter was working with Disciplinary Counsel on a single administrative hearing as what Disciplinary Counsel described as her "second chair." *Id.* at 126:23–127:17.

49. Potter never presented evidence before the Board in a hearing. Ex. 1, Potter Dep. 27:5-7.

50. Attorneys in the Litigation Department and attorneys in the Disciplinary Department might confer at particular times during the complaint process if, for example, a Litigation Department attorney has a question about an investigation the attorney in the Disciplinary Department is familiar with, but there was little overlap in their job duties. Ex. 3, Gile Dep. 13:16-14:3; Ex. 2, Price Dep. 10:25-11:6; Ex. 4, Henricks Dep. 11:11-17.

51. During the relevant period, female attorney Caitlin Kremer was employed as a Litigation Department attorney. ECF 56, Pretrial Order, Stipulations ¶ 17.

52. Caitlyn Kremer (female) and Jacob Overbey (male) had "the same position description" and performed "the same job duties." Ex. 3, Gile Dep. 19:18-23.

53. Caitlin Kremer's salary was increased to match Jacob Overbey's salary because they had "the same position description" and performed "the same job duties." Ex. 3, Gile Dep. 19:18-23.

**D. Potter's Pay Complaints**

54. Potter first complained to Human Resources regarding her compensation in or about May 2024. Potter complained she was underappreciated and believed newly hired attorneys were earning higher salaries than she was. Ex. 2, Price Dep. 10:1-3.

55. In connection with her complaint in May 2024, Potter prepared and provided a list of job duties and "other responsibilities" that she regularly performed in her role as Associate Disciplinary Counsel. Ex. 7; Potter Email to Price, May 29, 2024. The list included reviewing and processing complaints, assisting with investigations (answering legal questions from investigators, subpoena enforcement, and reviewing for missing information), attending and presenting at review committees/councils, attending and participating in various meetings, legal research, and document drafting. *Id*. at Attachment, p. 1.

56. None of the job duties and other responsibilities identified by Potter in May 2024 included any job duties or responsibilities related to litigation of cases. *Id.*

57. Potter filed a Charge of Discrimination with the EEOC and Kansas Human Rights Commission on July 7, 2025 (the "Charge"). ECF 56, Pretrial Order, Stipulation ¶ 18; Ex. 3, Gile Dep. 18:24-19:6.

58. Potter's Charge alleged sex-based compensation disparities. Pretrial Order Potter, Plaintiff's Factual Contentions; Ex. 1, Potter Dep. 153:3-4.

59. Susan Gile testified that Caitlin Kremer's salary was increased to match Jacob Overbey's because they occupied the same position and performed the same job duties. Ex. 3, Gile Dep. 19:18-23.

**F. August 8, 2025 Board Meeting**

60. Potter attended the KSBHA Board meeting on August 8, 2025. ECF 56, Pretrial Order Potter, Stipulation ¶ 19; Ex. 1, Potter Dep. 17:4-7.

61. Potter traveled from Arizona to attend the Board meeting in person. ECF 56, Pretrial Order Potter, Stipulation ¶ 19; Ex. 1, Potter Dep. 22:21-25.

62. During the meeting, the Board entered multiple executive sessions. ECF 56, Pretrial Order Potter, Stipulations ¶¶ 21-24.

63. Executive sessions were limited to Board members and Board counsel. ECF 56, Pretrial Order Potter, Stipulations ¶¶ 24-25; Ex. 1, Potter Dep. 38:1-4.

64. Agency staff members, including Potter, were required to leave the room during executive sessions unless specifically invited to remain. ECF 56, Pretrial Order, Stipulation ¶ 24, Ex. 1, Potter Dep. 38:24-25.

65. Potter brought a pen capable of audio recording to the August 8, 2025 meeting. Ex. 1, Potter Dep. 32:13-24; ECF 56, Pretrial Order, Plaintiff's Factual Contentions at 6-7.

66. Potter was not authorized to record executive sessions of the Board. Ex. 1, Potter Dep. 38:2-4.

67. Potter was not a participant in the executive sessions conducted on August 8, 2025. Ex. 1, Potter Dep. 38:1-4; 87:17.

68. During the August 8, 2025 Board meeting, employee Chandni Bhakta reported concerns to Scott Henricks that Potter appeared to be leaving a pen in the meeting room during executive sessions. Ex. 4, Henricks Dep. 15:5-24.

69. Bhakta told Scott Henricks she had observed Potter place a pen in a notebook, position the notebook toward the front of the room before executive sessions, and retrieve the notebook afterward. Ex. 4, Henricks Dep. 15:18-24; Ex. 3, Gile Dep. 28:20-29:15.

70. Scott Henricks reported the concern to Susan Gile. Ex. 4, Henricks Dep. 16:1-8; Ex. 3, Gile Dep. 27:10-20.

71. After another executive session began, Scott Henricks and Kansas Highway Patrol Trooper Tyler Hummel examined the notebook left behind in the room. Ex. 4, Henricks Dep. 16:23-17:16.

72. Trooper Hummel located a pen inside the notebook. Ex. 4, Henricks Dep. 17:15-20.

73. Trooper Hummel determined that the pen appeared to be more than a standard writing instrument because it contained what appeared to be a USB-style connection. Ex. 4, Henricks Dep. 17:20-25; 18:16-24.

74. Trooper Hummel seized the pen and removed it from the meeting room for further investigation. ECF 56, Pretrial Order Potter, Stipulations ¶¶ 28-29; Ex. 4, Henricks Dep. 19:9-14; Ex. 8, Custodian Affidavit.

75. Later that day, Trooper Hummel advised Agency leadership that the device appeared to be a recording device. ECF 56, Pretrial Order Potter, Stipulation ¶ 30; Ex. 4, Henricks Dep. 19:18-24; 22:2-4; Ex. 8, Custodian Affidavit.

76. Potter was then placed on paid administrative leave. ECF 56, Pretrial Order Potter, Stipulation ¶ 30; Ex. 4, Henricks Dep. 22:8-12; Ex. 2, Price Dep. 19:1-4; Ex. 9, Recording Transcript.

77. Potter claims she did not intentionally attempt to record executive sessions and maintains she forgot the pen remained in the room. Ex. 1, Potter Dep. 42:2-3; 204:10-12.

78. Potter's conduct violated the policies maintained by the Agency and the Board. Ex. 10, Defendant's Interrogatory Responses, No. 5.

**G. Termination**

79. Kansas Highway Patrol later obtained access to the contents of the recording device. ECF 56, Pretrial Order, Stipulation ¶ 32; Ex. 8, Custodian Affidavit.

80. Agency leadership was asked to review excerpts from the recordings to determine whether executive sessions had been recorded. Ex. 4, Henricks Dep. 27:20-28:14; Ex. 3, Gile Dep. 35:17-36:6.

81. Gile and Henricks reviewed the recordings the following week and confirmed the device contained conversations that occurred in the executive sessions, including privileged conversations regarding Potter's Charge. Ex. 3, Gile Dep. 32:4-14; 36:1-6; Ex. 4, Henricks Dep. 25:21-26:1.

82. Potter was notified on August 14, 2025 that her employment was terminated effective September 2, 2025. ECF 56, Pretrial Order Potter, Stipulation ¶ 31.

83. Potter has never denied that the pen belonged to her. Ex. 1, Potter Dep. 45:19-24; Ex. 4, Henricks Dep. 23:19-24:10; Ex. 9, Recording Transcript.

## ARGUMENT

### **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Potter's "opinion, … speculation, conjecture, or surmise" "carr[ies] no probative weight" and does not create a genuine dispute. *Cypert v. Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 481 (10th Cir. 2011) (quotations omitted). And even if disputed, a fact is not material unless "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1111 (10th Cir. 2005) (disputed, but irrelevant or unnecessary, facts do not preclude summary judgment).

## **Arguments and Authorities**

### I. Potter's Equal Pay Act Claim Fails as a Matter of Law

To establish a prima facie case of pay discrimination under the EPA, a female plaintiff must demonstrate that: (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances. *Nazinitsky v. INTEGRIS Baptist Med. Ctr., Inc.*, 852 F. App'x 365, 367 (10th Cir. 2021).

Potter's burden is substantial.

If Potter manages to establish a prima facie case, the burden shifts to Defendant to prove that the wage differential resulted from: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The fourth defense is broad and applies where an employer demonstrates that compensation decisions are driven by legitimate business considerations unrelated to sex. See *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311-12 (10th Cir. 2006); *Riser v. QEP Energy Co.*, 776 F.3d 1191, 1198-99 (10th Cir. 2015).

Defendant is entitled to summary judgment on Potter's EPA claim because she cannot establish a prima facie case, and even if she could, the undisputed facts show the pay differential was premised on a factor other than sex.

**A. Potter Has No Evidence to Support her Claims**

It is well-settled that after the pretrial order is entered, its contents control the subsequent course of the litigation. "A proper pretrial order, as envisioned by the drafters of Fed.R.Civ.P. 16, is definitive. It has sharpened and simplified the issues to be tried, and it represents a complete statement of all the contentions of the parties. *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817 (10th Cir. 1979)(internal citations omitted).

Potter's factual contentions in the Pretrial Order do not identify a single male employee whom she believes was paid more for substantially equal work. She alleges no facts upon which she basis her compensation discrimination claims. She includes no facts relating to her salary, a comparator's salary, or the difference between the two. In fact, Potter's factual contentions in the Pretrial Order offer little more than those in her Complaint – suggesting that in the course of discovery Potter has uncovered no evidence whatsoever to support her discrimination claims. Summary judgment should be entered in favor of Defendant on Potter's Equal Pay Act and Title VII discrimination claims for that reason alone. *Id.* (holding that trial court has discretion to exclude facts and contentions not included in pretrial order); *D'Souza-Klamath v. Cloud Cty. Health Ctr., Inc.*, No. 07-4031, 2009 WL 902377, at *17–18 (D. Kan. Mar. 31, 2009)(granting summary judgment against plaintiff where pretrial order contained no facts or evidence to support plaintiff's cause of action, including lack of allegations showing damages).

**B. Potter Did Not Perform Substantially Equal Work to her Comparator.**

The threshold issue under the EPA is whether Potter and her proposed comparator performed jobs requiring equal skill, effort, and responsibility. 29 U.S.C. § 206(d)(1). The Tenth Circuit has repeatedly emphasized that this is a "practical judgment on the basis of all the facts and circumstances of a particular case." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997). "Skill includes such considerations as experience, training, education, and ability." *Brickey v. Emps. Reassurance Corp.*, 293 F. Supp. 2d 1227, 1231 (D. Kan. 2003)

Potter compares herself to essentially "any male attorney" at the Agency based solely on the fact that all were employed as licensed attorneys at the same Agency. SOF ¶ 32. Her primary focus, however, is Jacob Overbey. It is undisputed that Potter and Overbey had materially different job duties and responsibilities, meaning their work was not substantially equal. SOF ¶¶ 36–43. The Equal Pay Act does not ask whether employees are similarly qualified or whether they share the same profession. Rather, it asks whether they actually perform substantially equal work. *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311-12 (10th Cir. 2006). The focus is on the work performed, not titles, credentials, educational background, or broad occupational classifications. *Id. see also E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 257 (2d Cir. 2014)(rejecting argument that "an attorney is an attorney is an attorney" for purposes of an EPA claim). Jobs need not be identical, but they must be more than "comparable" in order to be "substantially equal." *Id*. See also *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997).

**1. The Work Potter Performed Did Not Require Equal Skill**

Potter identifies Jacob Overbey as the comparator for purposes of her EPA claim, arguing that all attorneys at the Agency should be compensated the same based solely on a shared occupation. However, the EPA inquiry evaluates the skills actually required and exercised in

performing the job, not merely the credentials necessary to be hired. *Sprague*, 129 F.3d at 1364. While both Potter and Overbey possessed law degrees and attorney licenses, the undisputed evidence establishes that Potter and Overbey occupied different positions, worked in different department, reported to different supervisors, and performed substantially different job duties. SOF ¶¶ 20, 36–43.

Potter worked as an attorney in the Agency's Disciplinary Department. SOF ¶¶ 4, 20. Attorneys assigned to the Disciplinary Department, including Potter, reviewed disciplinary complaints, determined whether disciplinary allegations warranted an investigation, worked with non-attorney investigators, and presented matters to review committees and councils. SOF ¶¶ 19, 22–23, 55.

By contrast, litigation attorneys, including Overbey, were responsible for presenting cases before the Board's disciplinary panels, conducting traditional discovery-related activities such as taking depositions, negotiating settlements, and managing contested proceedings against represented and unrepresented parties. SOF ¶¶ 18, 29, 37–39, 46. Litigation attorneys required litigation-related advocacy skills because presenting and arguing disciplinary cases in administrative proceedings constituted their primary responsibility. SOF ¶ 40. Those distinctions are not semantic. They go directly to the core Equal Pay Act inquiry.

Potter was not a litigator, and she did not perform the traditional litigation responsibilities that Overbey did. Potter did not argue or present cases before the Board. In fact, Potter never even took a single deposition while employed by the Agency. SOF ¶ 47. She never served as prosecuting counsel in an administrative hearing. SOF ¶ 48. Those responsibilities were among the core functions assigned to litigation attorneys. SOF ¶¶ 29, 39–40, 46. Instead, Potter reviewed complaints when they were initially received by the Agency. Attorneys in the Disciplinary

Department decide whether a complaint makes it through the front door, and if it does, they work with investigators to gather the initial evidence to support the complaint. Then, Litigation Department attorneys take it from there, shouldering the adversarial functions that follow, including depositions, settlement negotiations, case presentation, and arguing the case before the Board. SOF ¶¶ 18–19, 39, 44, 46, 50. Although the departments necessarily communicated as matters moved from investigation to litigation, that collaboration reflected different stages of the same disciplinary process, not substantially equal work.

Even Potter's eleventh-hour assertion that there was "some overlap" between her job duties and Overbey's is not enough to satisfy the equal work standard, which "is not to be construed broadly." *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222,* 297 F.3d 1146, 1149 (10th Cir.2002). "Like or comparable work does not satisfy this standard, and it is not sufficient that some aspects of the two jobs were the same." *Id.* (internal quotation marks omitted). *Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x 908, 912 (10th Cir. 2012). Potter and Overbey did not perform jobs requiring equal skill.

**2. The Work Potter Performed Did Not Require Equal Responsibility**

"Responsibility" under the EPA concerns "the degree of accountability required in the performance of the job," with particular emphasis on "the importance of the job obligation." 29 C.F.R. § 1620.17(a). Superficial overlap in duties does not establish equal responsibility. The Tenth Circuit requires the jobs themselves to be substantially equal, not merely "comparable" or "like." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364–65 (10th Cir. 1997). And the inquiry focuses on the actual content of the positions rather than their titles or generalized descriptions. *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015). "Responsibility concerns the degree

of accountability required in performing the job." *Brickey v. Emps. Reassurance Corp.*, 293 F. Supp. 2d 1227, 1231 (D. Kan. 2003).

The question is not simply whether two employees perform tasks that can be described in similar terms. Rather, the inquiry examines the degree of accountability inherent in the performance of the respective jobs and the importance of the obligations assigned to them. *See* 29 C.F.R. § 1620.17(a).

Potter and Overbey are both attorneys employed by the Board, and their positions necessarily involve some overlapping legal functions. Both positions may require legal research, analysis of legal issues, preparation of legal documents, meetings with Board personnel, and some form of advocacy on behalf of the Board. But similarities at that level of generality do not establish substantially equal work under the EPA. *Sprague* expressly rejected an EPA claim where the plaintiff performed some of the same functions as the higher-paid male employees but failed to establish that she occupied substantially the same position or performed tasks at the same level of responsibility. 129 F.3d at 1364–65.

Potter cannot establish that her Associate Disciplinary Counsel position required responsibility substantially equal to that of Associate Litigation Counsel. Responsibility under the Equal Pay Act concerns "the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17(a). And although minor differences in responsibility will not defeat an EPA claim, the jobs must actually be substantially equal, not merely comparable. *Riser v. QEP Energy*, 776 F.3d 1191, 1196–97 (10th Cir. 2015); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364–65 (10th Cir. 1997).

The undisputed evidence demonstrates a meaningful difference in the degree of responsibility assigned to the two positions. Potter's own position description places Associate

Disciplinary Counsel in a supporting role under more senior attorneys. SOF ¶¶ 21–23. It states that the employee works "under the direction of the Disciplinary Counsel" and identifies the Disciplinary Counsel as the person who assigns work, gives directions, answers questions, and is directly in charge of and evaluates the position. SOF ¶ 21. The individual duties reinforce that structure. The largest duty listed for the position is "Assists Disciplinary Counsel and Deputy Disciplinary Counsel" in reviewing and opening or closing complaints. The position also "[p]repares legal documents as directed by Disciplinary Counsel/Deputy Disciplinary Counsel"; conducts legal research in preparing documents "under attorney supervision," and "[a]ssists with preparation" of disciplinary investigations and presentations. Potter confirmed in her deposition that those descriptions fairly represented her actual work. SOF ¶ 24. Though she disagreed with the percentage of time spent on various duties, Potter admitted "this list of job duties is a fair representation of the job." SOF ¶ 24. Potter acknowledged that "it was part of the role to assist" Disciplinary Counsel. SOF ¶ 25.

Potter likewise admitted the subordinate position she occupied within the Disciplinary Department's reporting structure. Potter admitted she held "a lower level position" in the department. She admitted that no attorneys reported to her and that she reported to other attorneys. SOF ¶ 26. Although Potter testified that she operated "very independent[ly] the majority of the time," she admitted that if an issue arose, she reported directly to Nancy Dodik. SOF ¶ 27.

Like other attorneys, Potter exercised legal judgment. She independently analyzed incoming complaints to determine whether allegations implicated a practice act (i.e. implicated a legal issue). But independence in performing particular tasks does not establish that the positions themselves imposed equal degrees of responsibility. Potter's position description, and her testimony, repeatedly placed her work within a structure of assistance, direction, and attorney

supervision.

The role of attorneys in the Associate Litigation Counsel position was materially different. From the outset, the position description expressly characterized the position as a "highly responsible legal and administrative position as Associate Counsel for the Board of Healing Arts," language that does not appear in the Associate Disciplinary Counsel position description. SOF ¶¶ 28, 30. The job duties and responsibilities of the role further demonstrate the level of responsibility. Associate Litigation Counsel was charged with providing legal counsel to Board members reviewing complaints, litigating actions seeking revocation, suspension, or limitation of professional licenses, handling scientifically complex litigation including depositions, acting as prosecuting attorney at administrative hearings, and serving as counsel for the Board in judicial and administrative actions. SOF ¶ 29.

Potter's own testimony confirms that these distinctions were real, not merely distinctions on paper. Potter admitted that she never handled a deposition while employed by the Board. Potter SOF 47. When asked whether she acted as prosecuting attorney at administrative hearings, she did not testify that she independently performed that responsibility; instead, she explained that, when her employment ended, she was working with Disciplinary Counsel as what Disciplinary Counsel described as her "second chair." SOF ¶48.

The distinction is also evident in proceedings before the Board itself. Potter testified that litigation attorneys generally were the attorneys who presented evidence before the Board in disciplinary cases. SOF 39. Potter admitted that she never presented evidence before the Board in a hearing. SOF ¶ 49. Though disciplinary and litigation attorneys participated in the same overall disciplinary process, their responsibility within that process was not the same.

The Litigation Department performed adjudicative and prosecutorial functions. The

Disciplinary Department performed investigative and complaint-review functions. SOF ¶¶ 18–19, 29, 39, 44. Because the positions involved different duties, different responsibilities, different chains of supervision, and different functional roles within the Agency, Potter cannot establish that she and Overbey performed substantially equal work.

### B. The Compensation Differential Between Potter and Overbey Resulted from a Factor Other than Sex.

If a plaintiff establishes a prima facie case of discrimination under the EPA, the defendant must show the pay disparity was justified by one of four permissible reasons: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015). Even assuming Potter could establish a prima facie Equal Pay Act claim, which she cannot, the record evidence establishes that any compensation differential resulted from a factor other than sex.

It is undisputed the compensation differences between Potter and the Agency's other attorneys tracked the position held, not the sex of the employee occupying it. During the relevant period, female attorney Caitlin Kremer worked in the Litigation Department. SOF ¶ 51. Kremer's compensation was increased to match Overbey's because they held the same position and performed the same duties. SOF ¶¶ 52–53, 59.

Moreover, the Agency employed attorneys in three distinct departments, in different roles with different responsibilities. SOF ¶¶ 16–19. Potter was employed as an Associate Disciplinary Counsel, an attorney in the Disciplinary Department. SOF ¶¶ 4, 20. Overbey was employed as an Associate Litigation Counsel, an attorney in the Litigation Department. SOF ¶¶ 33, 37. Litigation attorneys were responsible for litigation, case presentation, settlement negotiations, depositions, and disciplinary prosecutions. SOF ¶¶ 18, 29, 39, 46. Potter did not perform those functions. SOF

¶¶ 47–49, 56. Attorney compensation was set by comparison within the Agency's departments, not across the Agency as a whole. SOF ¶ 12.

The Equal Pay Act does not prohibit employers from paying different wages for different jobs. It prohibits paying different wages to employees who perform substantially equal jobs. Here, the undisputed evidence establishes that the Agency compensated employees according to the position occupied and the duties assigned. SOF ¶ 12. Those are legitimate factors other than sex within the meaning of the Equal Pay Act, and Defendant is entitled to summary judgment on Potter's Equal Pay Act claim.

## II. Defendant is Entitled to Summary Judgment on Potter's Title VII Compensation Discrimination Claim

Title VII similarly prohibits "discriminat[ing] against any individual with respect to his compensation ... because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). However, unlike her claim under the Equal Pay Act, Potter "has the ultimate burden of proving her employer ***intentionally*** discriminated against her." *Riser*, 776 F.3d at 1199 (citation omitted). "A plaintiff can establish this by either direct evidence or circumstantial evidence that creates an inference of intentional discrimination." *Nazinitsky v. INTEGRIS Baptist Med. Ctr., Inc.,* 852 F. App'x 365, 367 (10th Cir. 2021). When the plaintiff relies on circumstantial evidence of discrimination—as is the case here—courts apply the three-step burden-shifting framework set forth in *McDonnell Douglas* and its progeny. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–07 (1973).

Under *McDonnell Douglas,* the aggrieved employee must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. To establish a prima facie case of disparate compensation under Title VII, Potter must first prove that she occupies a job similar to that of higher paid males." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1363 (10th Cir. 1997) *citing Meeks,* 15 F.3d at 1019. "Once a *prima facie* case is established, the defendant must articulate a

'legitimate, non-discriminatory reason for the pay disparity.' This burden is 'exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them." *Id*. Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her. *Id.; See also Tidwell,* 989 F.2d at 409. That is, "the plaintiff must show that 'a discriminatory reason more likely than not motivated [the employer] to pay her less.' " *Meeks,* 15 F.3d at 1019 (quoting *Miranda,* 975 F.2d at 1529).

While Title VII does not require the EPA's showing of "substantially equal" work, where a plaintiff attempts to establish discrimination using comparator evidence, the plaintiff must identify similarly situated employees who were treated more favorably. The Tenth Circuit requires that comparators must be similarly situated in all material respects. See *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (holding that comparator analysis requires a "particularized" examination of whether employees were similarly situated in all relevant respects and subject to the same standards); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (affirming summary judgment where employees were not similarly situated in all relevant respects); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (holding employees are similarly situated only when they "deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline"); *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (examining whether employees had comparable work histories and were subject to the same policies and decisionmakers).

Potter cannot meet that standard.

### A. Potter Has No Evidence to Support her Claims

It is well-settled that after the pretrial order is entered, its contents control the subsequent course of the litigation. "A proper pretrial order, as envisioned by the drafters of Fed.R.Civ.P. 16,

is definitive. It has sharpened and simplified the issues to be tried, and it represents a complete statement of all the contentions of the parties. *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817 (10th Cir. 1979)(internal citations omitted).

Potter's factual contentions in the Pretrial Order do not identify a single male employee whom she believes was paid more for substantially equal work. She alleges no facts upon which she basis her compensation discrimination claims. She includes no facts relating to her salary, a comparator's salary, or the difference between the two. In fact, Potter's factual contentions in the Pretrial Order offer little more than those in her Complaint – suggesting that in the course of discovery Potter has uncovered no evidence whatsoever to support her discrimination claims. Summary judgment should be entered in favor of Defendant on Potter's Equal Pay Act and Title VII discrimination claims for that reason alone. *Id.* (holding that trial court has discretion to exclude facts and contentions not included in pretrial order); *D'Souza-Klamath v. Cloud Cty. Health Ctr., Inc.*, No. 07-4031, 2009 WL 902377, at *17–18 (D. Kan. Mar. 31, 2009)(granting summary judgment against plaintiff where pretrial order contained no facts or evidence to support plaintiff's cause of action, including lack of allegations showing damages).

**A. Potter Has No Evidence to Support Her Claims**

As discussed more fully in Section I.A above and incorporated fully herein, the Pretrial Order lacks any evidence supporting Potter's compensation discrimination claims. Potter's factual contentions in the Pretrial Order offer little more than those in her Complaint – suggesting that in the course of discovery Potter has uncovered no evidence whatsoever to support her discrimination claims. Summary judgment should be entered in favor of Defendant on Potter's Equal Pay Act and Title VII discrimination claims for that reason alone.

**B. Potter's Proposed Comparator Is Not Similarly Situated.**

Although Title VII does not impose the Equal Pay Act's "substantially equal work" requirement, a plaintiff relying on comparator evidence must establish that the proposed comparator is similarly situated in all material respects. Potter cannot do so.

"A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline. Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated." *Norman v. Town & Country Heating & Air Conditioning Co., LLC*, No. 24-cv-2537-KHV-TJJ, 2025 U.S. Dist. LEXIS 170242, at *9 (D. Kan. Sep. 2, 2025). Potter identifies Jacob Overbey as the male employee she knows "for sure" was allegedly similarly situated to her. SOF ¶ 35. But Potter's own testimony establishes the material differences between them. Potter admitted that Overbey worked in the Litigation Department, while she worked in the Disciplinary Department. SOF ¶¶ 20, 33, 37. They reported to different supervisors and had different job duties and responsibilities. SOF ¶¶ 41–43. The record is replete with evidence of substantive differences between Potter and Overbey.

Potter's failure to identify a similarly situated male who earned more is dispositive of her Title VII claim. Potter has identified male employees who were also attorneys and who earned more than her, but there is no evidence they held comparable jobs under comparable employment circumstances. Because Potter cannot identify a higher-paid employee outside her protected class whose job, responsibilities, supervision, qualifications, standards, and relevant circumstances were sufficiently similar, Potter cannot establish a prima facie Title VII compensation-discrimination claim.

### C. Defendant had a Legitimate Non-Discriminatory Reason for the Pay Disparity, and There is no Evidence of Pretext.

Even if Potter could establish a prima facie case of discrimination, which she cannot, Defendant is nonetheless entitled to summary judgment because it had a legitimate, nondiscriminatory reason for the difference in compensation between Potter and the male Litigation Department attorneys. If the plaintiff establishes a prima facie case, the employer must "state a legitimate, nondiscriminatory reason for its adverse employment action." *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006) quoting *Plotke v. White,* 405 F.3d 1092, 1099 (10th Cir.2005) (quotation omitted). "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.* Under the Title VII analysis, Potter must prove that Defendant intentionally discriminated against her because of her sex. *Id.*

Defendant's burden to articulate a legitimate, nondiscriminatory reason for the compensation differences is "one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized the burden as "exceedingly light." *Henderson v. Stormont-Vail Healthcare, Inc.*, 607 F. Supp. 3d 1173, 1183 (D. Kan. 2022). "Defendant need only explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *Thomas v. Farmers Ins. Exch.*, 448 F. Supp. 3d 1174, 1191 (D. Kan. 2020). Defendant has more than met its burden. As discussed more fully in Section I.B above, the differences in compensation between Potter and Overbey were based solely on the differences in their job duties and responsibilities. Attorneys in the Litigation Department performed more sophisticated legal work, with greater responsibilities, and the differences were reflected in the compensation paid to the employees in their respective departments.

Defendant having met the burden to articulate a legitimate, nondiscriminatory reason for the compensation disparity, Potter must prove Defendant's reason was a pretext for unlawful discrimination. The record is completely devoid of any evidence showing pretext. "A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006) *citing Green v. New Mexico*, 420 F.3d 1189, 1192–93 (10th Cir.2005) (internal quotations omitted). However, Potter cannot simply rely on her own speculation. *Thomas v. Farmers Ins. Exch.*, 448 F. Supp. 3d 1174, 1192 (D. Kan. 2020); s*ee also Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1238 (10th Cir. 2015) (affirming summary judgment against plaintiff's Title VII claim because plaintiff "merely advanced speculative theories" that failed to demonstrate pretext); *see also Webster v. Shulkin*, 707 F. App'x 535, 542 (10th Cir. 2017) (holding that where plaintiff hasn't discredited employer's nondiscriminatory explanation, plaintiff's "claims don't rise above the level of speculation, which is insufficient to demonstrate pretext").

Without evidence of pretext, Potter's Title VII discrimination claim cannot survive summary judgment, and Defendant's Motion should be granted on Count II of the Complaint.

## III. Potter's Retaliation Claim Fails Because the Record Evidence Shows Her Employment was Terminated for Misconduct and Engaging in Unlawful Activity.

Title VII prohibits "employer actions that discriminate against an employee … because she has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025) (quotations and alterations omitted). To prevail on a Title

VII retaliation claim, Potter must prove her "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). That means Potter must show that if she had "not engaged in the protected activity but everything else had been the same," Defendant would not have taken the same actions. *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 890 (11th Cir. 2016) (quoting and affirming that this but-for jury instruction "accurately stated the law"); *Brooks v. City of Kankakee*, 7 F.4th 649, 657 n.27 (7th Cir. 2021) (same "but for" standard in 7th Cir. Pattern Civil Jury Instructions).

In the absence of direct evidence, courts apply the *McDonnell Douglas* burden-shifting. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008). Under this framework, Potter first must establish a prima facie case of retaliation. If she does, this creates a presumption of retaliation, which Defendant can defeat by proffering any legitimate, non-retaliatory reason for its actions; the Court then must enter judgment for Defendant unless Potter can prove Defendant's stated reasons are mere pretexts for retaliation. *See Hinds*, 523 F.3d at 1195, 1201. In this case, Potter cannot prove a prima facie case of retaliation and, in any event, Defendant had legitimate, non-retaliatory, non-pretextual reasons for all its actions. This Court, therefore, should grant summary judgment for Defendant.

To prove a prima facie claim for retaliation under Title VII Potter must show: (1) she engaged in protected activity, (2) she suffered a materially adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015). Protected activity requires that Potter either (1) participated in or initiated a Title VII proceeding or (2) opposed discrimination made unlawful by Title VII. *Boese v. Fort Hays State Univ.*, 814 F.Supp. 2d 1138, 1146 (D. Kan. 2011), aff'd, 462 F. App'x 797 (10th Cir. 2012). Defendant does not dispute that Potter filed an EEOC charge in July

2025 and that she suffered an adverse employment action when her employment was terminated on August 14. However, Potter's prima facie case fails because there is no causal connection between the two events. Potter was not terminated because she filed an administrative charge, rather, she was terminated as a result of her own unlawful conduct during the August 2025 Board Meeting.

**A. Potter failed to exhaust her retaliation claim based on the ethics complaint filed against her.**

In the Pretrial Order, Plaintiff alleges for the first time that Derenda Mitchell retaliated against her (presumably on behalf of the Agency) by filing a disciplinary complaint with the Office of the Disciplinary Administrator. Plaintiff's defamation claim was previously dismissed by the Court (ECF No. 19) based on well-settled, indisputable law that reports to the Disciplinary Administrator are absolutely privileged. Plaintiff's attempt to reinvent her claims against Mitchell as unlawful retaliation under Title VII is intended solely to harass Mitchell and Defendant, and demonstrates the very danger against which Kan. Sup. Ct. R. 238 was designed to protect.[1] *Jarvis v. Drake*, 250 Kan. 645, 649, 830 P.2d 23, 26 (Kan. 1992) ("apprehension of personal liability for presenting a question of professional responsibility to the disciplinary administrator might tend to subvert the system established for ensuring that persons holding licenses to practice law are 'fit to be entrusted with professional and judicial matters.'") *quoting* Kan. Sup. Ct. R. 202.

Even if Potter's retaliation claim based on the ethics complaint had any legal basis (which

---

[1] Rule 238 provides that "a person is absolutely immune from liability for making an initial complaint or report" to the Kansas Board for Discipline of Attorneys. Kan. Sup. Ct. Rule 238. The grant of immunity reflects the "extreme importance" such complaints have to the "entire ethics system of this state." 830 P.2d at 25 (Kan. 1992) (finding it "of extreme importance [to] the entire ethics system of this state that any person that has a complaint against an attorney be allowed to express that complaint. It's the purpose of this system to find out whether it has merit or [does] not [have] merit").

is does not), she failed to include it in her Charge or her amended charge, and Defendant is entitled to summary judgment based on failure to exhaust. The exhaustion rule derives from two principal purposes: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim … To advance these purposes, after a plaintiff receives a notice of her right to sue from the EEOC, that plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.' … 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]'" *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018)(internal citations omitted).

Even if Potter had exhausted this claim with the administrative agency, which she did not, she failed to raise it at any point prior to the Pretrial Order. It is well-settled that "claims or defenses not contained in the pleadings should normally not appear for the first time in the pretrial order because 'such a practice deprives one's adversary or fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice.' " *Garver v. Principal Life Ins. Co.*, No. 19-2354-JWB-KGG, 2020 WL 6273474, at *3 (D. Kan. Oct. 26, 2020), citing *Shaub v. Newton Wall Company/UCAC*, 153 Fed. Appx. 461, 464-65 (10th Cir. 2005) (citing *Wilson v. Muchala*, 303 F.3d 1207, 1215-16 (10th Cir. 2002)); *see also Continental Coal, Inc. v. Cunningham*, 2008 WL 145209, No. 06-2122-KHV-KGS (D. Kan. Jan. 14, 2008).

Defendant is entitled to summary judgment on these claims, which are not properly before the Court.

### B. Potter cannot show a causal connection between her alleged protected activity and her termination.

To causally connect Potter's complaint of retaliation with any materially adverse

employment action, she must present "evidence of but-for causation...based on more than mere speculation, conjecture, or surmise." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (quotation omitted).

Potter attempts to rely on the temporal nexus between her early July administrative charge and her suspension on August 8 and subsequent termination a week later. SOF ¶¶ 57, 60, 76, 82. It is true that a court may presume causation if a protected activity and an adverse employment action are closely tied in time. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011). However, it is equally well-settled that evidence of temporal proximity has "***minimal probative value***" if intervening events occurred between the protected activity and the adverse action. *Dewitt v. Sw. Bell Tel. Co.*, 41 F. Supp. 3d 1012, 1023 (D. Kan. 2014) (emphasis added), *aff'd,* 845 F.3d 1299 (10th Cir. 2017)(collecting cases); *see also Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001-02 (10th Cir. 2011)(finding unreported absences after plaintiff's complaint about discrimination constituted intervening events that undermined her temporal-proximity argument). Where, as here, there is evidence of intervening events, such evidence undermines any inference of retaliatory motive and severs the causal link. *Id.*

After Potter filed her Charge on July 7, 2025, she traveled to Kansas to attend the Board's August meeting, on August 8, 2025. SOF ¶¶ 57, 60–61. During a closed executive session of the Board meeting, a law enforcement officer discovered a hidden recording device in Potter's notebook. SOF ¶¶ 71–75. The Agency subsequently confirmed the device had been used to record closed, executive sessions, in violation of not only Board policy, but state and federal law. SOF ¶¶ 78, 81. In fact, the device contained a privileged conversation among Board members and the Board's General Counsel, regarding Potter's Charge. SOF ¶ 81. This intervening conduct, not the filing of her Charge, ultimately led to Potter's termination. SOF ¶¶ 75–76, 79–82.

### C. Potter was terminated for a legitimate, non-retaliatory reason, and there is no evidence of pretext.

If Potter could establish a prima facie case, which she cannot, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for terminating her employment. Again, this "burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light." *Henderson v. Stormont-Vail Healthcare, Inc.*, 607 F. Supp. 3d 1173, 1183 (D. Kan. 2022).

The undisputed record evidence is clear. Potter was placed on administrative leave when it was discovered that she left a recording device in a closed, executive session of the Board. SOF ¶¶ 68–69, 71–76. After it was confirmed that Potter had, in fact, recorded closed sessions of the Board – sessions she was not authorized to attend – Potter's employment was terminated. SOF ¶¶ 63–67, 81–82. Potter's conduct not only violated the Agency's rules, it violated state and federal criminal laws. SOF ¶ 78.

Having established its legitimate, non-retaliatory reason for Potter's termination, the burden shifts to Potter to establish by clear and convincing evidence that Defendant's reason for her discharge is pretext for retaliatory conduct. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir.2008). Evidence is clear "if it is certain, unambiguous, and plain to the understanding, and it is convincing "if it is reasonable and persuasive enough to cause the trier of fact to believe it." *Zinn v. McKune*, 949 F. Supp. 1530, 1537 (D. Kan. 1996). The record is devoid of any evidence proving pretext, and Potter relies solely on speculation.

When evaluating pretext, the Court's role is to determine "whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue,

or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent, or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006). When the Court completes this analysis, it reviews the facts "as they appear to the person making the decision to terminate." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). And the Court's role is not to second-guess the employer's decision or even to determine whether the decision was "wise or fair; [it asks] only whether the employer honestly believed its reasons and acted in good faith upon them." *Johnston v. Mini Mart, Inc.*, 675 F. App'x 825, 830 (10th Cir. 2017).

Potter indisputably left a recording device in the Board meeting during an executive session and surreptitiously recorded the closed session, which she was not authorized to attend. SOF ¶¶ 66–67, 69, 71–73, 81. Potter did not deny that she owned the recording device and did not deny that she brought it to the Board meeting. SOF ¶¶ 65, 83. Potter cannot credibly deny that her actions – recording closed sessions of the Board's meeting and administrative hearings – violate the Agency's workplace rules and its code of conduct. SOF ¶ 78. Moreover, Potter cannot credibly deny that her actions – intercepting oral communication between individuals without their consent – violated state and federal laws. *See generally* K.S.A. 21-6101(a)(4); 18 U.S.C. 2510 *et seq*. In fact, the recording itself provides indisputable evidence of Potter's misconduct, SOF ¶¶ 79–81, and the Court need not consider whether the conduct was "serious enough" to warrant Potter's termination. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009) ("We are in no position to state that the numerous documented failures … were not serious enough to justify termination").

Neither Potter nor the Court may act as a "super personnel department" or second-guess a defendant's honestly held business judgments. *Young v. Dillon Cos*., 468 F.3d 1243, 1250 (10th Cir. 2006). The Court does not ask whether the decision was fair. *Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1307 (10th Cir. 2017). The only question is whether Defendant honestly believed the reason it gave for its decision and acted in good faith on that belief. *Coles v. City of Overland Park, Kansas*, No. 2:24-CV-02296-HLT, 2025 WL 3513838, at *16 (D. Kan. Dec. 8, 2025).

The uncontroverted material facts and record evidence leave no question that the termination of Potter's employment occurred because she engaged in serious misconduct during the August 8, 2025 Board meeting. Defendant is entitled to summary judgment on Count III of the Complaint.

**Conclusion**

Potter's claims rely on unsupported speculation and conjecture. The material facts are undisputed, and Defendant respectfully requests the Court grant its motion and enter judgment in its favor on all claims.

Respectfully submitted by,

**FOULSTON SIEFKIN LLP**

By: */s/ Sara E. O'Keefe*
Anthony F. Rupp, KS Bar No. 11590
Sara E. O'Keefe, KS Bar No. 30850
7500 Defendant Boulevard, Suite 1400
Overland Park, KS 66210
T (913) 498-2100 | F (913) 498-2101
trupp@foulston.com
sokeefe@foulston.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of October 2026, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record.

*/s/ Sara E. O'Keefe*